IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARCH INSURANCE COMPANY<br>*as Subrogee of* FAIRFIELD TOWNSHIP<br>VOLUNTEER FIRE COMPANY NO. 1,<br>**Plaintiff,**<br><br>v<br><br>CAROL & DAVE'S ROADHOUSE, INC.,<br>**Defendant.** | )<br>)<br>)<br>)  **2:11-cv-801**<br>)<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are numerous motions in limine: MOTION IN LIMINE (Measure of Damages) (Document No. 69), with brief in support, filed by Defendant Carol & Dave's Roadhouse, Inc. ("Carol & Dave's"); PLAINTIFF'S MOTION IN LIMINE FOR AN ADVERSE INFERENCE INSTRUCTION THAT THE TESTIMONY OF DEFENDANT'S EX-EMPLOYEE, RYAN GIELECKI, WOULD NOT HAVE BEEN SUPPORTIVE OF DEFENDANT'S POSITION HAD HE BEEN PRODUCED AS A WITNESS IN THE LITIGATION (Document No. 71), with brief in support, filed by Plaintiff Arch Insurance Company ("Arch"), as subrogee of Fairfield Township Volunteer Fire Department ("Fairfield VFD"); PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ALL REFERENCES TO ARCH INSURANCE COMPANY AT TRIAL (Document No. 73), with brief in support; PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY FROM DAVID CASSLER OR CAROL CASSLER OF ANY DISCUSSIONS WITH OTHER INDIVIDUALS ABOUT ALLEGED PRIOR PROBLEMS WITH THE STOVES AND/OR GAS LINES (Document No. 75), with brief in support; and PLAINTIFF'S MOTION IN LIMINE [ ] TO PRECLUDE THE EXPERT REPORT AND TESTIMONY OF DEFENDANT'S EXPERT, GARY KUBBER, AT

TRIAL (Document No. 77), with brief in support. Responses in opposition to each motion (except as to Document No. 75) have been filed and the motions are ripe for disposition. The motions will be addressed seriatim.

Factual and Procedural History

This case arises from an unfortunate wedding day fiasco. Dean and Trisha Caldwell (the "Caldwells") rented the Fairfield VFD fire hall in which to host a wedding reception. Carol & Dave's was the Caldwells' caterer for the event. Briefly summarized, Carol & Dave's personnel made several unsuccessful attempts to light a stove in the kitchen of the fire hall, and in the process opened a valve on a propane gas line. The gas line had previously been connected to a deep fryer. However, that appliance had been disconnected and the line had been left uncapped/unplugged by someone from Fairfield VFD. A small fire started after one attempt to light the stove, which the caterers extinguished. Unfortunately, they were not aware that propane gas had accumulated in an adjacent storage closet, which thereafter ignited into flames which escalated into the ceiling and burned out of control. The fire department structure was destroyed.

The parties have submitted competing expert reports regarding causation of the fire. The expert of Arch opines, in essence, that the origin and cause of the fire was the result of Carol & Dave's repeated attempts to light the gas stove. The expert of Defendant opines, in essence, that the fire was caused by the failure of Fairfield VFD to properly cap the unconnected propane gas line to the deep fryer. A supplemental report from the expert for Arch acknowledges the uncapped propane gas line, and agrees that "capping the gas line would have prevented the accident," but continues to ascribe causation to various actions of Carol & Dave's personnel.

Arch, a citizen of Missouri, filed this lawsuit in federal court based on diversity of citizenship jurisdiction. Carol & Dave's contended that the real party in interest was Fairfield VFD (a Pennsylvania citizen) and because the Defendants were also Pennsylvania citizens, the case should be remanded to the Westmoreland County state court. Arch opposed the motion. The Court ruled that Arch (a Missouri citizen) was a real party in interest, *Hancotte v. Sears, Roebuck & Co.,* 93 F.R.D. 845, 846 (E.D. Pa. 1982) (citations omitted), and therefore, retained jurisdiction based upon diversity of citizenship.

The Caldwells and Fairfield VFD are no longer parties. The only remaining claim is the subrogation action of Arch against Carol & Dave's to recover the amount Arch paid to Fairfield VFD under its insurance policy (alleged in the Complaint to be "in excess of $500,000.00"). Subrogation is an equitable doctrine. In a subrogation action, an insurance company stands in the shoes of its insured after it has paid an amount which represents the tortfeasor's debt to the insured. The subrogee is subject to all defenses that could be raised against its insured. *Allstate Indemnity Co. v. Martin*, 2011 WL 2790265 (E.D. Pa. July 15, 2011). The insurance company may not recover more than it paid to its insured. *Penn Natl. Ins. v. HNI Corp.*, 2007 WL 2907542 at *3 (M.D. Pa. 2007). As explained in *Public Service Mut. Ins. Co. v. Kidder-Friedman,* 743 A.2d 485, 488 (Pa. Super. 1999):

> as the subrogee stands in the precise position of the subrogor the subrogee should be limited to recovering in subrogation the amount received by the subrogor relative to the claim paid by the subrogee, for equity will not allow the subrogee's claim to be placed ahead of the subrogor's.

In its pretrial statement, Arch asserts several elements of damages: the replacement cost of the building ($1,309,268.03); personal property ($142,483.23); and

extra items such as fencing and cleanup ($7,647.00), for a total claim of $1,459,398.20.[1]

Arch asserts that all damages have been adjusted by the insurance carrier via its third-party administrator, McNeil and Company.[2] If there are several elements of claimed damages and the insured did not collect in full, the subrogee's recovery must also be proportionately limited. As explained in *Allstate Ins. Co. v. Clarke*, 527 A.2d 1021, 1025-26 (Pa. Super. 1987):

> If, for whatever reason, Clarke does not collect, in full, his claim for property damage, it would be improper for Allstate to receive the full extent of its payment to Clarke. To do so would be to place Allstate's claim in damages proceeds above that of Clarke's and would require the diversion of proceeds for other elements of Clarke's damages to Allstate to the detriment of Clarke; this is contrary to the entire concept of subrogation.

As an illustration, the *Allstate* Court presented a hypothetical in which an insured was awarded $500,000 in damages for pain and suffering, lost wages and earning capacity, and medical bills, but recovered only $100,000. The Court explained that because the insured recovered only 20% of his total claim, the subrogee could recover only 20% on any component element of damages. *Id*. at 1025-26 & n. 5. On the other hand, an insured who accepts a settlement conclusively establishes the amount of its claim. *Tristani ex rel Karnes v. Richman*, 652 F.3d 360, 377 (3d Cir. 2011). As noted above, the parties have not yet provided sufficient information to the Court regarding the claim of Arch for subrogation damages.

With that background, the Court turns to the pending motions in limine.

---

[1] See also March 29, 2011 Letter from counsel for Arch to CNA, insurer for Defendant ("March 29 Demand Letter"), which identifies damages for the value of the building, cleaning, demolition, personal property, business income loss, extra expenses, and storage barn erection.

[2] The documentary support for Arch's claimed damages (Plaintiff's Exhibits P-9 through P-14) has not yet been provided to the Court.

Measure of Damages

In its pretrial statement, Arch – for the first time – stated that it was seeking recovery for the full <u>replacement</u> cost of the burned down fire department building, rather than its fair market value. This reflected a distinct change in position regarding damages. In Plaintiff's March 29, 2011 Demand Letter, counsel for Arch stated: "Understanding that the <u>replacement cost will **not** be recoverable</u>, the loss is as follows: Building [Actual Cash Value] $514,664.00." (Emphasis added).

Defendant contends that under Pennsylvania law, the proper measure of damages for a destroyed building is the lesser of: (1) the cost of repair; or (2) the decrease in the fair market value ("FMV") of the property, taking into account its age, condition and market factors. *Jones v. Monroe Electric Co.*, 39 A.2d 569, 572 (Pa. 1944); *Pennsylvania Dept. of Gen. Servs. v. U.S. Mineral Prod. Co.*, 898 A.2d 590, 596 (Pa. 2006); *Penn Natl*, 2007 WL 2907542; *Babich v. Pittsburgh & New England Trucking Co.*, 563 A.2d 168 (Pa. Super. 1989). Accordingly, Defendant contends that the recovery for which Arch may be eligible for property damage is limited to $514,664.00, the amount which it represented was the FMV of the Fairfield VFD building in the March 29, 2011 Demand Letter.

Arch concedes that Defendant has correctly stated the general rule of Pennsylvania law. However, Arch contends that this case falls within an exception recognized in *Pennsylvania Dept. of Transportation v. Estate of Crea*, 483 A.2d 996 (Pa. Commw. 1997). *Crea* involved the collapse of a bridge which was hit by a drunk driver. The Court recognized the "general rule," but concluded that it could not be applied to a bridge forming part of a highway system because the bridge lacked a "market" and its FMV was too speculative. In essence, Arch contends that the Fairfield VFD had an intrinsic public value such that it is analogous to the bridge in *Crea*.

5

The Court concludes that the general rule of Pennsylvania law will be applicable to determine the monetary value of property damage in this case. The fire destroyed a building – not the volunteer fire department itself. That building consisted of a garage, an event hall, and a kitchen. Numerous similar structures exist and an appraisal of fair market value could readily be performed. Thus, determination of a FMV for the Fairfield VFD building is not unduly speculative. Indeed, Arch was apparently able to assign a FMV of $514,664.00 to the building, as of March 29, 2011. *See also U.S. Mineral Products*, 898 A.2d at 598 (Pennsylvania Supreme Court criticizing *Crea* for failing to reflect depreciation). Arch will be limited to recovery of the reduction in fair market value of the Fairfield VFD building.

In accordance with the foregoing, Defendant's MOTION IN LIMINE (Measure of Damages) (Document No. 69) will be **GRANTED.**

Adverse Inference re Ex-Employee

Arch requests that the jury be given an "adverse inference" instruction that the testimony of Ryan Gielecki would not have been supportive of Defendant's position had Gielecki been produced as a witness. Gielecki was a former dishwasher for Carol & Dave's who was present at the Fairfield VFD building on the day of the fire.

As recently summarized in *Barrett v. Ross Twp. Civil Serv. Comm'n*, 55 A.3d 550, 560 (Pa. Commw. 2012) (citations omitted), "the missing witness adverse inference rule is only permitted in narrow circumstances":

> [W]hen a potential witness is available to only one of the parties to a trial, and it appears this witness has special information material to the issue, and this person's testimony would not merely be cumulative, then if such party does not produce the testimony of this witness, the jury may draw an inference that it would have been unfavorable.

6

An adverse inference <u>cannot</u> be used when:

1. The witness is so hostile or prejudiced against the party expected to call him that there is a small possibility of obtaining unbiased truth;

2. The testimony of such a witness is comparatively unimportant, cumulative, or inferior to that already presented;

3. The uncalled witness is equally available to both parties;

4. There is a satisfactory explanation as to why the party failed to call such a witness;

5. The witness is not available or not within the control of the party against whom the negative inference is desired; and,

6. The testimony of the uncalled witness is not within the scope of the natural interest of the party failing to produce him.

In support of its motion, counsel for Arch quoted, selectively, from the deposition of David Cassler (one of the owners of Carol & Dave's). In response, Defendant provided the entire relevant portions of that deposition. The testimony omitted by counsel for Plaintiff reflects that: (1) counsel for Plaintiff was going to follow up his oral request for Gielicki's address with a letter; and (2) Carol & Dave's did not know Gielicki's location because he had "disappeared" and the W-4 (or W-2) form sent to his last-known address had been returned as undeliverable. To put it mildly, counsel for Plaintiff does not enhance his reputation with the Court by engaging in such gamesmanship. *See* Pennsylvania Rule of Professional Conduct 3.3 (Candor to the Tribunal); Fed. R. Civ. P. 11(b).

It appears that Gielicki left his employment with Defendant soon after the fire and there has been no contact with him since. Further, upon receipt of the motion in limine,[3] defense counsel followed up with Carol & Dave's accountant, and confirmed that mail sent to Gielicki's last-known address had been returned as undeliverable.

---

[3] Apparently, counsel for Plaintiff did not contact defense counsel in an attempt to resolve this discovery dispute prior to filing the instant motion.

The request of Arch for an adverse inference instruction is without merit. Gielicki is equally available to both parties; there is a more-than-satisfactory explanation as to why Carol & Dave's failed to call him; and Gielecki is not within the control of Carol & Dave's.

In accordance with the foregoing, PLAINTIFF'S MOTION IN LIMINE FOR AN ADVERSE INFERENCE INSTRUCTION (Document No. 71) will be **DENIED**.

References to Arch Insurance Company

Arch asks the Court to preclude all references to itself, and instead, seeks to proceed in the name of its insured, Fairfield VFD. Arch is concerned that a jury may be inclined to award less money to an insurance company. In its response in opposition, Defendant points out, inter alia, that: (1) Arch is the named Plaintiff ; (2) diversity jurisdiction is proper in this Court solely because Arch is a real party in interest; and (3) this is a subrogation claim, on which the jury must be properly instructed. Specifically, Defendant reasons that proof of the amount that Arch actually paid to Fairfield VFD is an essential prerequisite to any claim for recovery. More generally, Defendant contends that regardless of any disfavor jurors may harbor against insurance companies generally, such considerations would not apply in this case because Arch is merely seeking reimbursement for an amount it has already paid to its insured.

The Court agrees with Defendant. Arch brought this action, and invoked the jurisdiction of this Court, in its own name. In any event, because this is a subrogation action, the jury must be instructed regarding the role of Arch in the overall matter.

In accordance with the foregoing, PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ALL REFERENCES TO ARCH INSURANCE COMPANY AT TRIAL (Document No. 73) will be **DENIED**.

Prior Problems With Stoves or Gas Line

Arch seeks to preclude testimony by Carol or David Cassler about discussions they had concerning alleged prior problems with the stove and/or gas line on the ground that such testimony is hearsay.  Arch cites several portions of the depositions of the Casslers which relate to their discussions with unnamed firefighters.   Defendant did not file a response to this motion.

It appears that the referenced portions of the depositions do contain inadmissible hearsay. A more expansive ruling cannot be made at this time, however, as the admissibility of other testimony of the Casslers must await the context and development of the record at trial.

In accordance with the foregoing, PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY FROM DAVID CASSLER OR CAROL CASSLER OF ANY DISCUSSIONS WITH OTHER INDIVIDUALS ABOUT ALLEGED PRIOR PROBLEMS WITH THE STOVES AND/OR GAS LINES (Document No. 75) is **GRANTED IN PART**.


Defendant's Expert Gary Kubber

Kubber is a property damage adjuster who was consulted by CNA upon receipt of the March 29, 2011 Demand Letter from Arch.  Arch seeks to preclude Kubber from testifying as an expert witness at trial, and to preclude introduction of his expert report, because Defendant failed to comply with the deadlines in the Case Management Order ("CMO") and Fed. R. Civ. P. 26 which provide for identification of experts and the filing of expert reports.  Kubber's report was first produced in October 2012, almost three months after the expiration of the deadline.

In response, Defendant explains that Kubber was advanced as an expert witness only after Arch claimed replacement cost damages in its pretrial statement.  Defendant represented that Kubber did not have a "substantial issue" with the market value of the Fairfield VFD

building as claimed in the March 29 Demand Letter, and therefore, "[t]here was no need to retain Mr. Kubber as an expert and there was no intention to have him testify at trial."

Given the ruling of the Court that Arch may not recover replacement cost damages, the instant motion is largely moot. There will be no "replacement cost" claim for Kubber to rebutt. Defendant will not be permitted to present Kubber as an expert witness on the FMV claim because it did not comply with the applicable deadlines. Defendant will be held to its representation that Kubber would not testify at trial of an FMV claim.

In accordance with the foregoing, PLAINTIFF'S MOTION IN LIMINE [ ] TO PRECLUDE THE EXPERT REPORT AND TESTIMONY OF DEFENDANT'S EXPERT, GARY KUBBER, AT TRIAL (Document No. 77) is **GRANTED**.


An appropriate Order follows.


McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARCH INSURANCE COMPANY** *as Subrogee of* FAIRFIELD TOWNSHIP VOLUNTEER FIRE COMPANY NO. 1, **Plaintiff,**<br><br>v<br><br>**CAROL & DAVE'S ROADHOUSE, INC., Defendant.** | )<br>)<br>)<br>) **2:11-cv-801**<br>)<br>)<br>)<br>)<br>)<br>) |

## ORDER OF COURT

AND NOW, this 19th day of February, 2013, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that:

Defendant's MOTION IN LIMINE (Measure of Damages) (Document No. 69) is **GRANTED**;

PLAINTIFF'S MOTION IN LIMINE FOR AN ADVERSE INFERENCE INSTRUCTION THAT THE TESTIMONY OF DEFENDANT'S EX-EMPLOYEE, RYAN GIELECKI, WOULD NOT HAVE BEEN SUPPORTIVE OF DEFENDANT'S POSITION HAD HE BEEN PRODUCED AS A WITNESS IN THE LITIGATION (Document No. 71) is **DENIED**;

PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ALL REFERENCES TO ARCH INSURANCE COMPANY AT TRIAL (Document No. 73) is **DENIED**;

PLAINTIFF'S MOTION IN LIMINE TO PRECLUDE ANY TESTIMONY FROM DAVID CASSLER OR CAROL CASSLER OF ANY DISCUSSIONS WITH OTHER INDIVIDUALS ABOUT ALLEGED PRIOR PROBLEMS WITH THE STOVES AND/OR GAS LINES (Document No. 75) is **GRANTED IN PART**; and

PLAINTIFF'S MOTION IN LIMINE [ ] TO PRECLUDE THE EXPERT REPORT AND TESTIMONY OF DEFENDANT'S EXPERT, GARY KUBBER, AT TRIAL (Document No. 77) is **GRANTED.**

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc:     **Jeffrey C. Sotland, Esquire**
        Email: jsotland@defensecounsel.com
        **Mark L. Reilly, Esquire**
        Email: Mark1.Reilly@cna.com
        **James W. Harvey, Esquire**
        Email: jharvey@margolisedelstein.com
        **Mark R. Lane, Esquire**
        Email: mrl@dellmoser.com