IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ARCH INSURANCE COMPANY<br>*as Subrogee of* FAIRFIELD TOWNSHIP<br>VOLUNTEER FIRE COMPANY NO. 1,<br>**Plaintiff,**<br><br>v.<br><br>CAROL & DAVE'S ROADHOUSE, INC.,<br>**Defendant.** | )<br>)<br>)<br>)  2:11-cv-801<br>)<br>)<br>)<br>)<br>)<br>) |

### MEMORANDUM OPINION AND ORDER OF COURT

Pending before the Court are: the MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 94) filed by Defendant Carol & Dave's Roadhouse, Inc. ("Carol & Dave's"), which the Court took under advisement in its Memorandum Opinion and Order of April 16, 2013 ("April 16 Opinion"); the CROSS MOTION TO ALLOW PRESENTATION OF REPAIR COSTS AS A MEASURE OF DAMAGES (ECF No. 100) filed by Plaintiff Arch Insurance Company ("Arch"), as subrogee of Fairfield Township Volunteer Fire Company No. 1 ("Fairfield"), which the Court took under advisement in its April 16 Opinion on one narrow issue; and PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND COURT ORDER OF APRIL 16, 2013 (ECF No. 104), with Concise Statement of Material Facts ("CSMF"), Affidavit of attorney Jeffrey Sotland and Memorandum of Law in support. Defendant has filed a brief and response to the motion for reconsideration.

Also filed of record and relevant to these motions are Plaintiff's Proffer of the evidence it seeks to present at trial to prove damages to the Fairfield fire company building (ECF No. 107); and Defendant's response in opposition thereto (ECF No. 111).

1

Factual and Procedural History

The facts of this subrogation case have been set forth at length in prior opinions and will not be repeated here. Very briefly, the Fairfield fire company building was destroyed by fire and Arch seeks to recover the amounts it paid to Fairfield under its fire insurance policy. There have been repeated disputes regarding the proper measure of damages and the evidence that may be presented to the jury to prove the alleged damages.

In a Memorandum Opinion and Order dated February 19, 2013 ("February 19 Opinion"), the Court reviewed Pennsylvania law regarding subrogation damages as follows:

> In a subrogation action, an insurance company stands in the shoes of its insured after it has paid an amount which represents the tortfeasor's debt to the insured. The subrogee is subject to all defenses that could be raised against its insured. *Allstate Indemnity Co. v. Martin*, 2011 WL 2790265 (E.D. Pa. July 15, 2011). The insurance company may not recover more than it paid to its insured. *Penn Natl. Ins. v. HNI Corp.*, 2007 WL 2907542 at *3 (M.D. Pa. 2007). As explained in *Public Service Mut. Ins. Co. v. Kidder-Friedman,* 743 A.2d 485, 488 (Pa. Super. 1999):
>
>> as the subrogee stands in the precise position of the subrogor the subrogee should be limited to recovering in subrogation the amount received by the subrogor relative to the claim paid by the subrogee, for equity will not allow the subrogee's claim to be placed ahead of the subrogor's.

The Court noted that because Arch had claimed several categories of damages (i.e., building, personal property, cleanup, etc.) and the insured did not collect in full, the subrogee's recovery on each category must also be proportionately limited, as explained in *Allstate Ins. Co. v. Clarke*, 527 A.2d 1021, 1025-26 (Pa. Super. 1987). The Court expressed its concern that: "the parties have not yet provided sufficient information to the Court regarding the claim of Arch for subrogation damages."

The February 19 Opinion is relevant to the pending motions in two other respects: (1) it rejected Arch's "replacement cost/intrinsic value" argument and held that "Arch will be limited to recovery of the reduction in fair market value of the Fairfield VFD building"; and (2) it denied Arch's motion in limine for an adverse inference instruction regarding the whereabouts of Ryan Gielecki, an ex-employee of Carol & Dave's (the "Adverse Inference Issue"), and chastised counsel for engaging in "gamesmanship."  Arch did not seek reconsideration or clarification of the February 19 Opinion.

Jury selection and trial was originally scheduled to start on Monday, March 11, 2013, but was postponed when counsel informed the Court -- that morning -- of significant unresolved issues regarding damages.  The Court dismissed the potential jurors and established a briefing schedule to provide an opportunity for both sides to be fully heard on the damages evidentiary issue, but ruled that the evidentiary record is and would remain closed.

Defendant then filed a Partial Summary Judgment motion in which it contended that Arch should be completely barred from recovering for damages to the building because it can present no admissible evidence in support of a FMV claim.  In response, Arch contended, somewhat vaguely, that its representative is qualified to testify as to FMV.  In the exercise of caution, the Court gave Arch an opportunity to: (1) submit a proffer of all evidence that it intends to present regarding the reduction in FMV of the building; and (2) either a proffer of Fire Chief Stiffler's qualifications to testify as to FMV or a declaration that it will not present Stiffler as a witness on that topic.

The outstanding issues are now ripe and will be finally resolved in advance of trial in order to avoid further inconvenience to the Court and potential jurors.  Jury selection and trial has been rescheduled to commence on May 28, 2013.

Motion for Reconsideration

The purpose of a motion for reconsideration is to "correct manifest errors of law or fact or to present newly discovered evidence." *Max's Seafood Cafe ex-rel Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999) (*citing Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985)). It is well-established that a party must overcome a high hurdle to succeed in such a motion. A court should exercise its discretion to alter or amend its judgment only if the movant demonstrates: (1) a change in the controlling law; (2) a clear error of law or fact or to prevent manifest injustice; or (3) availability of new evidence not available when the judgment was granted. *See id*. Motions for reconsideration are not intended to provide a "second bite at the apple" or to provide a mechanism for losing parties to ask the Court to rethink its decision.

Plaintiff's motion: (1) seeks clarification that the damages issue pertains to a structure, rather than real estate; (2) contends that sanctions regarding the Adverse Inference Issue should be moot because counsel had a mix-communication regarding follow-up letters; and (3) contends that counsel did not intend to mislead the Court in his citation of *Westinghouse Air Brake Co. v. City of Pittsburgh*, 176 A. 13, 15 (Pa. 1934).

As an initial matter, the standard for reconsideration has not been met. Arch has failed to point to (1) a change in the controlling law; a clear error of law or fact or manifest injustice; or (3) availability of new evidence. The request for clarification as to whether the case involves "real property" or "structures" is a red herring. Obviously, if the building was, in fact, destroyed, its FMV after the fire was $0.00. Arch is well-aware that it is seeking recovery for damages to the Fairfield fire company building. No party has ever raised an issue of damages to the land, and the Court's orders have repeatedly referenced the "building."

The requests by counsel for Arch to moot the sanctions for his misconduct require further comment. Counsel for Arch is attempting to evade and recharacterize the issues and has failed to recognize, acknowledge and appreciate the actual basis of his misconduct.

As to the Adverse Inference Issue, the ire of the Court was <u>not</u> due to miscommunication between counsel regarding a follow-up letter, as Sotland now suggests. Rather, the Court was concerned about his decision to present a misleading and incomplete record to the Court in support of a motion that was entirely without merit. Pursuant to black-letter Pennsylvania law, an adverse inference "cannot be used when: . . . the witness is not available or not within the control of the party against whom the negative inference is desired." *Barrett v. Ross Twp. Civil Serv. Comm'n*, 55 A.3d 550, 560 (Pa. Commw. 2012). Sotland took the depositions of David and Carol Cassler on February 7, 2012, during which he learned that Gielecki had left his employment with Defendant soon after the fire and there had been no contact with him since.[1] Nevertheless, Arch asked the Court to give an "adverse inference" instruction to the jury based on "Defendant's failure to produce Ryan Gielecki as fact witness and/or provide information to Plaintiff to locate him." (ECF No. 79) Sotland presented a portion of David Cassler's deposition testimony, with an ellipsis which made it appear as if Defendant's accountant had failed to provide Gielecki's contact information. Sotland intentionally omitted the portion of the transcript which stated that he [Sotland] would send a letter to request such information. Even if Sotland had sent a follow-up letter and received no response, he should have contacted defense counsel in an attempt to resolve this discovery dispute prior to filing the motion in limine. The

---

[1] Although Sotland did acknowledge that Defendant's discovery responses and David Cassler's testimony indicated that Gielecki's whereabouts were unknown, Sotland did not disclose Carol Cassler's testimony that Gielecki "left us right after the fire. We've had no contact with him since." Carol Cassler Deposition at 21. Nor did he reference David Cassler's testimony that they had mailed Gielecki's W-4 form but it had been returned as undeliverable; and that "He disappeared. I don't know where he went." David Cassler Deposition at 42.

5

Court viewed Sotland's conduct as "gamesmanship" and regarded the motion for an "adverse inference" instruction as frivolous in light of the full record.  The Court referenced Pennsylvania Rule of Professional Conduct 3.3 (Candor to the Tribunal) and Fed. R. Civ. P. 11(b) as a warning, but did not impose any sanctions.

Unfortunately, Sotland did not heed the warning.  Instead, he attempted to mislead the Court as to the law which governs who may testify as to FMV damages – and invited the Court to make a reversible legal error.  Contrary to Sotland's most recent suggestion, the qualifications of Fire Chief Stiffler to testify to FMV damages were most certainly put at issue by Arch.  *See* ECF No. 97 at 8 ("Chief Kevin Stiffler is Entitled to, and Qualified to, Testify as to the Fair Market Value of the Structure at the Time of the Fire.")  Counsel for Arch made a two-step argument: (1) he cited *Westinghouse Air Brake Co. v. City of Pittsburgh*, 176 A. 13, 15 (Pa. 1934), a Pennsylvania Supreme Court case, for the proposition that an <u>owner</u> is generally permitted to testify to the FMV of his own property, even without laying a foundation as to his experience and knowledge; and (2) he cited a non-precedential opinion, *Watsontown Brick Co. v. Hercules Powder Co.*, 265 F. Supp. 268, 275 (M.D. Pa. 1967), for the proposition that a <u>president</u> of a company may testify to the FMV of corporate property, like an owner.  ECF No. 102 at 14-16.  Sotland then argued that Fire Chief Stiffler, "as the leader of the Fire Company and the person responsible for the operation of the fire company" is analogous to a company president, such that Stiffler should be permitted to testify regarding the FMV of the Fairfield fire company building – without any foundation as to his knowledge – like an "owner" of the property.

Sotland failed to disclose to the Court the actual, precedential holding of the Pennsylvania Supreme Court in *Westinghouse Air Brake* that a president of a corporation does

6

<u>not</u> have the same status to testify to FMV as an owner. 176 A. at 16. The Pennsylvania Supreme Court held that allowing the president of a company to testify without laying a proper foundation for his knowledge of FMV – the position Arch asked the Court to adopt in this case – was reversible error. *Id.* at 16. In sum, Sotland cited the portion of the *Westinghouse Air Brake* opinion that was helpful to his position, but failed to cite the actual holding of the case, which rendered his argument entirely untenable. <u>That</u> is what aroused the ire of the Court and violated Pennsylvania Rule of Professional Conduct 3.3 (Candor Toward the Tribunal) ("A lawyer shall not knowingly: … (2) fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client . . . .").[2]

Sotland laments that the imposition of sanctions for his failure to comply with Rule of Professional Conduct 3.3 would chill his ability to zealously advocate on behalf of his client. His understanding of his professional obligations is sadly skewed. While Rule of Professional Conduct 1.3 does require an attorney to act with diligence and zeal on behalf of his client, such zeal clearly does not excuse his compliance with all of his other ethical obligations. Sotland should reflect upon the following Comments to Rule of Professional Conduct 3.3:

> (2) This Rule sets forth the special duties of lawyers as officers of the court to avoid conduct that undermines the integrity of the adjudicative process. A lawyer acting as an advocate in an adjudicative proceeding has an obligation to present the client's case with persuasive force. Performance of that duty while maintaining confidences of the client, however, is qualified by the advocate's duty of candor to the tribunal. Consequently, although a lawyer in an adversary proceeding is not required to present an impartial exposition of the law or to vouch for the evidence submitted in a cause, the lawyer must not allow the tribunal to be misled by false statements of law or fact or evidence that the lawyer knows to be false.
>
> (4) Legal argument based on a knowingly false representation of law constitutes dishonesty toward the tribunal. A lawyer is not required to make a disinterested exposition of the law, but must recognize the existence of pertinent

---

[2] Sotland does not dispute that the holding of *Westinghouse Air Brake* is directly adverse and controlling. Nor does he claim that he was unaware of, or misunderstood, the precedential impact of the case.

legal authorities. Furthermore, as stated in paragraph (a)(2), an advocate has a duty to disclose directly adverse authority in the controlling jurisdiction that has not been disclosed by the opposing party. The underlying concept is that legal argument is a discussion seeking to determine the legal premises properly applicable to the case.

To enhance attorney Sotland's understanding of his ethical obligations, and as a sanction for his misconduct in this case, he shall attend ten (10) credit hours of Continuing Legal Education ("CLE") in ethics on or before December 31, 2013. On or before January 6, 2014, Sotland shall file a report to demonstrate and certify that he has completed this CLE obligation.

In accordance with the foregoing, PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND COURT ORDER OF APRIL 16, 2013 (ECF No. 104) will be **DENIED**.

Trial Evidence in Support of Damages

The Court turns now to the evidence that will be admitted in the upcoming trial. In a subrogation action, an insurance company stands in the shoes of its insured after it has paid an amount which represents the alleged tortfeasor's debt to the insured. The Court notes, as an initial matter, that the check(s) paid by Arch to Fairfield are not in the evidentiary record. Nor is there an itemization of what losses have been reimbursed. In its pretrial statement, Arch asserted several elements of damages. In addition to the building, Arch seeks subrogation for amounts it paid to Fairfield for personal property ($142,483.23); and extra items such as fencing and cleanup ($7,647.00). It will be Arch's burden to prove these fundamental prerequisites to recovery.[3]

---

[3] Of course, the jury will only reach the question of damages if it determines that Defendant is comparatively negligent for the fire.

The Court now addresses damages to the fire company building. In Plaintiff's Self Executing Disclosures pursuant to Fed. R. Civ. P. 26(a), Arch asserted a claim for damages of $563,158.28 for "ACV building."[4] For reasons unknown to the Court, Arch chose not to submit the documentary support for this amount as part of the proposed trial exhibits. Nor did Arch submit a real estate appraisal expert opinion. Instead, Arch attempts to recover a far higher amount ($1.3 million) under different legal theories.

The Court has held that the "replacement cost" and "repair cost" theories are not applicable to the facts of this case and that "Arch will be limited to recovery of the reduction in fair market value of the Fairfield VFD building." Yet, Arch's proffer of the evidence it seeks to present to the jury is based almost entirely on replacement and/or repair costs. In essence, Arch intends to have Fire Chief Stiffler testify that the replacement cost was $1,309,268.03 and the depreciation on the building was 50%, such that the "fair market value" would be 50% of the replacement cost, or $654,634.01. This transparent attempt to invite the jury to speculate on FMV based on replacement cost will not be countenanced.[5]

In the April 16 Opinion, the Court provided Arch with an opportunity to lay a proper foundation as to Stiffler's knowledge of the value of real estate in the vicinity; and his particular knowledge of the value of the Fairfield building before and after the fire, such that he could meet the standard in *Westinghouse Air Brake*. Arch has submitted **no** evidence of Stiffler's knowledge and experience as to the actual FMV of the building prior to the fire or his knowledge and experience as to similar buildings in the area. Thus, Stiffler will not be permitted to testify as to the FMV of the Fairfield Fire Company building. CROSS MOTION TO ALLOW

---

[4] Arch placed a similar FMV on the building, $514,664.00, in its March 29, 2011 Demand Letter.
[5] Arch's reliance on Pennsylvania Dept. of Gen. Servs. v. United States Mineral Prod. Co., 898 A.2d 590 (Pa. 2006), is misplaced because the building at issue in that case was on the grounds of the state capitol and the Court applied the *Crea* methodology.

PRESENTATION OF REPAIR COSTS AS A MEASURE OF DAMAGES (ECF No. 100) will be **DENIED**.

Conclusion

  Defendant contends in its Partial Summary Judgment motion that Arch should be completely barred from recovering for damages to the building because it can present no admissible evidence in support of a FMV claim.  The Court agrees.  Arch has failed to present or proffer sufficient evidence from which a jury could reasonably determine the FMV of the building at the time of the fire – despite several opportunities.  Indeed, many of the items listed in the proffer of evidence by Arch are irrelevant.  Earlier in the case, Arch apparently was able to place a FMV on the building.  Yet, due to the litigation decisions of Arch, there is no real estate appraisal expert opinion and there is no person who is qualified to testify as to the FMV of the building at the time of the fire.  Instead, the jury would be forced to engage in sheer speculation.

  To be very clear, Arch cannot recover for damages to the building.  Thus, no testimony or evidence will be admitted at trial as to damages to the building.  In accordance with the foregoing, the MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 94) will be **GRANTED**.

  Trial will commence, as scheduled, on May 28, 2013.  The jury will decide liability, and if appropriate, the amounts Arch may recover on its subrogation claims for personal property ($142,483.23); and extra items such as fencing and cleanup ($7,647.00).

  An appropriate Order follows.

                          McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ARCH INSURANCE COMPANY** *as Subrogee of* FAIRFIELD TOWNSHIP VOLUNTEER FIRE COMPANY NO. 1, **Plaintiff,** v **CAROL & DAVE'S ROADHOUSE, INC., Defendant.** | ) ) ) ) **2:11-cv-801** ) ) ) ) ) ) |

## ORDER OF COURT

AND NOW, this 7th day of May, 2013, for the reasons set forth in the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED and DECREED** that:

Defendant's MOTION FOR PARTIAL SUMMARY JUDGMENT (ECF No. 94) is **GRANTED**;

Plaintiff's CROSS MOTION TO ALLOW PRESENTATION OF REPAIR COSTS AS A MEASURE OF DAMAGES (ECF No. 100) is **DENIED** and likewise as to Fire Chief Stiffler's ability to testify to the fair market value of the building; and

PLAINTIFF'S MOTION FOR RECONSIDERATION OF THE MEMORANDUM OPINION AND COURT ORDER OF APRIL 16, 2013 (ECF No. 104) is **DENIED**. Attorney Sotland shall attend ten (10) credit hours of Continuing Legal Education ("CLE") in ethics on or before December 31, 2013. On or before January 6, 2014, Sotland shall file a report to demonstrate and certify that he has completed this CLE obligation.

BY THE COURT:

s/Terrence F. McVerry
United States District Judge

cc: **Jeffrey C. Sotland, Esquire**
Email: jsotland@defensecounsel.com
**Michael J. Herald**
Email: mherald@defensecounsel.com

**Mark L. Reilly, Esquire**
Email: Mark1.Reilly@cna.com
**John V. DeMarco**
Email: john.demarco@cna.com